UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| L.M., by and through his parents     and next friends, C.D. and A.M.,                      PLAINTIFFS, vs. Putnam BOARD of Education, Carol B. Arnold,     Georgeann Farrah, Melissa Rose,                      DEFENDANTS. | : : : : : : : : | CIVIL ACTION NO. 3:03CV680 (MRK) November 3, 2003 |

**AMENDED REPORT OF PARTIES' PLANNING MEETING**

Date Complaint Filed                                                       April 15, 2003
Date Complaint Served on Defendant                                April 21, 2003
Date of Appearance of Defendant:                                    May 12, 2003

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D.Conn. Local Civil Rule 38, a conference was held on June 11, 2003. A supplementary conference was held on November 3, 2003. The participants were:

**Andrew A. Feinstein, Esq.**, for L.M., by and through her parents and next friends, C.D. and A.M.;

**Frederick L. Dorsey, Esq. and Jennifer M. Rockwell, Esq.,** for defendants Board, Arnold, Farrah, and Rose.

**I.      CERTIFICATION**

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

**II.     JURISDICTION**

1

### A. Subject Matter Jurisdiction

This action arises under 20 U.S.C. § 1415(i)(3)(A) which confers jurisdiction on the district court to hear cases arising under 20 U.S.C. § 1415 without regard to the amount in controversy and under 42 U.S.C. §1983. The Defendants contest jurisdiction under 42 U.S.C. § 1983.

### B. Personal Jurisdiction

Mr. Joseph V. Pempek, Chairman of the Putnam Board of Education, was duly served of behalf of the defendant Board in hand at 280 Heritage Road, Putnam, Connecticut, on April 21 and 24, 2003, by State Marshall Arthur P. Johnston.

Defendant Carol B. Arnold was duly served through in hand service on Secretary of the State Susan Bysiewicz through certified mail to Carol B. Arnold at 8 Serenity Lake, Meredith, New Hampshire on May 14, 2003, by State Marshall Daniel Ficacelli.

Defendant Georgeann Farrah was duly served in hand at 33 Wicker Street, Putnam, Connecticut, on April 21 and 24, 2003, by State Marshall Arthur P. Johnston.

Defendant Melissa Rose was duly served by leaving a copy at the defendant's usual place of abode at 52 Prospect Street, Rockville, Connecticut, with Doug Yarosh, a person of suitable age and discretion then residing therein, on April 25, 2003 by State Marshall Daniel Ficacelli.

### III. BRIEF DESCRIPTION OF CASE

<u>L.M. v. Putnam Board of Education</u> is (1) a claim for damages against all defendants, pursuant to 42 U.S.C. §1983, for injuries suffered by plaintiff in violation of her rights under the Individuals with Disabilities Education Act and the Due Process

Clause to the Fourteenth Amendment to the United States Constitution; and (2) pendant State claims for assault, and intentional infliction of emotional harm.

### A. Claims of Plaintiffs

The plaintiffs claim that defendant Board (Count I) violated the rights of L.M. and her family under the IDEA by maintaining a custom or policy of calling the police to arrest a student with a disability for inappropriate behavior to avoid having to utilize the manifestation determination procedures of 20 U.S.C. §1415(k); by maintaining a custom or policy of conducting PPT meetings without proper notice of the meeting to the parents; by maintaining a custom or policy of excluding students with a disability from school without following the procedures of the law; and by utilizing the L.M.'s failure to comply with the request of the paraprofessional as a pretext to initiate its plan to exclude her from school, thereby depriving her of her right to a free appropriate public education.

The plaintiffs further claim that the defendant Board (Count II) violated the rights of L.M. and her family under the Due Process Clause by, under color of the laws of Connecticut, maintaining a custom or policy of physically restraining, carrying against her will, confining, and depriving liberty of L.M., placing her at risk of physical and emotional danger and injury; by maintaining a custom or policy of conspiring with the Putnam Police Department to arrest and place in custody L.M., placing her at risk of physical and emotional danger and injury; and by utilizing physical restraint, carrying, confinement, deprivation of liberty, and arrest without parental consent which so substantially departed from accepted professional standards as to indicate that professional judgment was not exercised and deprived L.M. of her right to be free from harm and restraint, caused her

harm and injury, including emotional and psychological trauma, deprivation of movement, physical pain and suffering, and educational regression.

The plaintiffs further claim that the individual defendants (Counts IV[1], VIII and XII), acting under color of law, violated the rights of L.M. and her parents, under the IDEA by calling the police to arrest the STUDENT for inappropriate behavior to avoid having to utilize the manifestation determination procedures of 20 U.S.C. §1415(k); by conducting a PPT meeting to plan a program for the STUDENT without proper notice of the meeting to the parents; by excluding L.M. from school on May 14, 2002, without following the procedures of the law; and by using L.M.'s failure to comply with the request of the paraprofessional as a pretext to initiate its plan to exclude her from school, thereby depriving the STUDENT of her right to a free appropriate public education.

The plaintiffs further claim that the individual defendants, acting under color of law, (Counts V, IX, XIII), physically restrained L.M., carrying against her will, confining, and depriving liberty of her; conspired with the Putnam Police Department to arrest and place in custody L.M.; and used physical restraint, carrying, confinement, deprivation of liberty, and arrest without parental consent which so substantially departed from accepted professional standards as to indicate that professional judgment was not exercised and deprived L.M. of her right to be free from harm and restraint.

---

[1]  Count III, which was a claim for attorneys' fees for the administrative due process hearing, has been resolved by settlement between the parties.

The plaintiffs further contend that the individual defendants assaulted (Counts VI, X, XIV) and intentionally inflicted emotional harm (Counts VII, XI, and XV) on defendant.

**B.     Defenses and Claims (Counterclaims, Third-Party Claims, Cross-Claims)**

The Defendants assert that they are immune from this lawsuit. The Defendants claim that the hearing officer erred by finding that the Board committed procedural violations that denied the student FAPE.  The hearing officer erred by awarding the Parents reimbursement for the partial hospitalization program at the Joshua Center in June and July of 2002, by awarding the student 90 days of one-hour one-to-one tutoring, and by awarding the Parents reimbursement for counseling by Noreen Chapman and Rocco Marino form May 10, 2002 until August 30, 2002.

**C.     Defenses and Claims of Third-Party Defendants.**

Not applicable.

**IV.    STATEMENT OF UNDISPUTED FACTS.**

Counsel certify that they made a good faith attempt to determine whether there are any material facts that are not in dispute.  The parties state that the following material facts are undisputed:

1.      The plaintiff, L.M., (DOB October 7, 1991) (hereinafter, the "STUDENT") at all times relevant to this matter was a 10-year old student at the Putnam Elementary School (hereinafter, the "School") in Putnam, Connecticut, in the fifth grade.  She is disabled and entitled to receive special education and related services pursuant to the

IDEA, 20 U.S.C. §§ 1400 et seq. from the defendant BOARD of Education. She has Bipolar Disorder, Childhood Onset.

2.  C.D. and A.M. ("plaintiff's parents") are L.M.'s mother and father and next friends. L.M. lives primarily with her mother, C.D., in Putnam, Connecticut, but also spends occasional nights at the home of her father, A.M., also in Putnam, Connecticut.

3.  The defendant, PUTNAM BOARD OF EDUCATION, (hereinafter, "BOARD") is responsible for providing educational services for students living within the jurisdiction of Putnam, Connecticut, pursuant to Chapter 170 of the Connecticut General Statutes.

4.  The defendant CAROL B. ARNOLD at all times relevant to this action was Assistant Principal of the Putnam Elementary School operated by the defendant BOARD. She is sued individually.

5.  The defendant GEORGEANN FARRAH at all times relevant to this action was Principal of the Putnam Elementary School operated by the defendant BOARD. She is sued individually.

6.  The defendant MELISSA ROSE at all times relevant to this action was a Social Worker employed by the defendant BOARD and assigned to work at the Putnam Elementary School. She is sued individually.

7.  During the 2001-2002 school year the STUDENT was a fifth grader at the defendant BOARD's Putnam Elementary School.

8. The STUDENT was initially referred for special education on May 24, 2002 and was identified for special education at a planning and placement team ("PPT") meeting of May 29, 2002.

9. The STUDENT first exhibited behavioral difficulties in a school setting when she was in preschool. During kindergarten, the STUDENT exhibited behavioral problems, including being non-complaint and assaultive towards the teacher. The STUDENT was suspended from school in June of her first grade year for assaulting the principal.

10. At the beginning of her second grade school year, the STUDENT had demonstrated aggressive behavior, including pushing another child down the stairs. The Collaborative Intervention Process team within the school recommended that the STUDENT be assessed for eligibility for special education services, noting that "violent outbursts are unpredictable and unprovoked, both in school and at home."

11. An initial PPT meeting was held on October 14, 1998 at which point the BOARD proposed and Ms. D consented to psychological and educational evaluations of the STUDENT.

12. At a follow up PPT meeting on December 17, 1998, the PPT team determined that the STUDENT was not eligible for special education services. The STUDENT achieved a Verbal IQ of 129, a Performance Scale IQ of 115, and a Full Scale IQ of 125. Her overall performance was tested in the superior range. On the Achenbach test, however, the STUDENT had clinically significant scores for delinquent behavior and significant issues with aggressive behavior. The December 17, 1998 PPT meeting only

reviewed the STUDENT's eligibility for designation under the specific learning disability label, but did not assess the STUDENT for eligibility under the designation of severe emotional disturbance.

13.  The BOARD did not consider the STUDENT for special education services until May 2002.

14.  The BOARD provided certain services to the STUDENT under a plan devised pursuant to section 504 of the Rehabilitation Act (a "504 Plan").

15.  The 504 Plan devised on February 25, 2002 and in effect until May 28, 2002, provided for a daily behavior point sheet, a voluntary time-away pass to permit the STUDENT to leave a conflictual situation, counseling as needed with the school psychologist and phone calls to parents on major behavioral incidents.

16.  From April to August 2001, the STUDENT attended the Joshua Center Partial Hospitalization Program.  In June 2001, the STUDENT was placed on Topamax, an anticonvulsant which is also used as a mood stabilizer, and Zyprexa, an antipsychotic drug, because the psychiatrist at the Joshua Center concluded that the STUDENT might suffer from bipolar disorder, childhood onset. The BOARD was first explicitly informed of the STUDENT's bipolar diagnosis in May 2002 by St. Francis Hospital.

17.  After what plaintiff's parents viewed as her best school year, the STUDENT began to have behavioral problems in the spring of 2002, her fifth grade year.  Starting in April 2002, behavioral problems increased in frequency and severity.  An incident of May 10, 2002, in which the STUDENT slapped one girl in the face in response to a perceived verbal slight and then hit another student in the stomach.

18.     The STUDENT returned to school on Monday, May 13, 2002. On Tuesday, May 14, the STUDENT left her classroom. The STUDENT encountered defendant ROSE in the hallway who reprimanded the STUDENT for being in the hallway without an escort. The STUDENT reacted assaultively.

19.     The BOARD called Ms. D to pick up the STUDENT.

20.     Plaintiff's parents decided to place the STUDENT in inpatient status at St. Francis Hospital to permit an adjustment of her medication on May 17, 2002.  The STUDENT was released on May 24 on an increased dosage of Seroquel and increased dosage of Topamax.  St. Francis Hospital sent a note to the BOARD's psychologist stating that the STUDENT was diagnosed with Bipolar Disorder, childhood onset.

21.     At the PPT of May 29, 2002, the BOARD determined that the STUDENT was eligible for special education services.

22.     At the PPT of May 29, 2002, BOARD officials presented three possible placements.  School officials on the team believed that placement in a regular class was inappropriate because of the safety of peers, adults and the student.  Another option was a special, self-contained class for students with Severe Emotional Disability labels -- a class entirely made up of seventh and eighth grade boys.  Plaintiff's parents, as well as the BOARD's psychologist, considered such a placement inappropriate for a fifth grade girl.  The other option was an outplacement at the Joshua Center Educational Program in Brooklyn, Connecticut.

23. Upon meeting with the educational director of the Joshua Center, Ms. D and the educational director agreed that the Joshua Center did not offer an appropriate program for the STUDENT.

24. Ms. D spoke to the BOARD's Superintendent of Schools on May 30, 2002. The STUDENT would be placed in the room with the special education teacher and a paraprofessional. Ms. D was told that the STUDENT would be taught in a classroom with Maureen Bolduc, a special education teacher with whom she had previously worked.

25. Only Mr. M attended a meeting on May 31, 2002.

26. After the meeting school psychologist Wendi St. Jean telephoned Ms. D.

27. No written Individualized Education Plan was presented at the May 31 meeting.

28. After the May 31 meeting, Mr. M took the STUDENT home because she was acting up during the meeting. Mr. M determined that, in light of such behavior, it would be better to wait to the next Monday to send the STUDENT to school.

29. From the May 31 meeting, Mr. M understood that the STUDENT would work with BOARD special education teacher Bolduc.

30. The STUDENT returned to school on Monday, June 3, 2002. Her behavior was fine. Indeed, the paraprofessional sent a note home stating, "[The STUDENT] had a great day. She complied w/all directions. Very polite and respectful."

31. On Tuesday, June 4, 2002, the STUDENT was in the special education classroom with Ms. Bolduc. She had interaction with other students. Her behavior was fine.

32. On Wednesday, June 5, 2002, the STUDENT was again placed in a small conference room off the main office, adjoining the office of defendant ARNOLD with only the paraprofessional. A male student was brought into in the room. The STUDENT stopped focusing on class work on which she was supposed to be working.

33. The paraprofessional twice asked the STUDENT to resume work on the class work. The STUDENT refused to resume work and the escort team was called to take the STUDENT to the time-out room.

34. The escort team, made up of defendant ROSE and special education teacher Kris Allard arrived. The STUDENT refused to walk under her own power.

35. The time-out room is a small room with no furnishings. The STUDENT was placed in this room by the escort team. Ms. Allard left the room first. Then, defendant ROSE backed out of the room. While doing so, the STUDENT allegedly kicked defendant ROSE. Defendant ROSE never showed any injury to Ms. Allard or the police.

36. Around 8:45 a.m. the school secretary called the Putnam Police dispatcher to seek police assistance. Police Officer Louis Cinque was dispatched to the Putnam Elementary School.

37. BOARD officials called Ms. D and Mr. M. Ms. D did not answer, so a message was left on her voice mail. Mr. M was at work. He immediately called Karen Boulanger who was volunteering at the Putnam Elementary School that day.

38. Ms. Boulanger was not allowed to see or speak to the STUDENT.

39. Once in the time-out room, at approximately 8:55 a.m., the STUDENT was restrained "due to self-injurious behavior [of] running and throwing self against wall." A

minute later, BOARD staff removed the STUDENT's shoes. Soon thereafter, the STUDENT started banging her head against a wall. When BOARD staff tried to restrain her physically, the STUDENT tried to pinch the fingers of the staff.

40. At 9:02 a.m., Officer Cinque of the Putnam Police Department arrived.

41. Officer Cinque took the STUDENT into custody and transported her to the Putnam Police Station.

42. Officer Cinque charged the STUDENT with Breach of Peace, in violation of Conn. Gen. Stat. § 53a-181.

43. Later on June 5, 2002, Ms. D attended a parent conference. Ms. D was informed that an IEP had been, in the BOARD's view, agreed to at the May 31 meeting.

## V. CASE MANAGEMENT PLAN.

### A. Modification of Standing Order on Scheduling in Civil Cases.

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases.

### B. Scheduling Conference with the Court.

The parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

### C. Early Settlement Conference.

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. The parties do not believe that settlement is possible at this time.

2. The parties do not request an early settlement conference.

3. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 36.

**D.   Joinder of Parties and Amendment of Pleadings.**

1. No party needs to join additional parties.

2. The Plaintiffs should be allowed until December 15, 2003 to file motions to amend the pleadings.

**E.   Discovery.**

The parties anticipate that limited discovery will be needed. Specifically, each party will depose no more than six witnesses no later than June 1, 2004. The parties will request permission to serve more than 25 interrogatories. Plaintiffs shall disclose any experts no later than February 2, 2004. Defendants may depose said experts no later than March 2, 2004. Defendants shall disclose experts no later than March 15, 2004. Plaintiffs shall depose said experts no later than April 15, 2004. All discovery will conclude by June 1, 2004. A damage analysis will be provided by any party who has a claim or counterclaim for damages by July 1, 2004.

**F.   Dispositive Motions.**

All dispositive motions, including motions for summary judgment, will be filed on or before August 2, 2004.

**G.   Joint Trial Memorandum.**

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed, to the extent one is necessary, within thirty days following rulings on dispositive motions.

**VI.    TRAIL READINESS**

The case will be ready for trial by the later of October 15, 2004 or sixty days following rulings on dispositive motions.

As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

So filed by representatives of all parties, this 6th day of November 2003.


PLAINTIFFS                                              DEFENDANTS


By: _____      By: _____
    Andrew A. Feinstein, Esq.                              Frederick L. Dorsey, Esq.  ct302715
    Law Offices of David C. Shaw, LLC              Jennifer M. Rockwell, Esq. ct24573
    34 Jerome Avenue                                        Siegel, O'Connor, Zangari, O'Donnell
    Bloomfield, Connecticut 06002                     & Beck, P.C.
    (860) 242-1238                                               150 Trumbull Street
    Fed.Bar No. ct11192                                     Hartford, Connecticut 06104
    aafein1@attglobal.net                                     (860) 727-8900
                                                                             fdorsey@siegeloconnor.com
                                                                             jrockwell@siegeloconnor.com